# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LINANEL BROWN MADISON, | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | NO. 17-40168-TSH |
| v. | ) | |
| | ) | |
| TIMOTHY CRUZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND MEMORANDUM ON DEFENDANT McDONALD'S MOTION TO DISMISS (Docket No. 24)

**February 13, 2019**

**HILLMAN, D.J.**

Linanel Brown Madison ("Plaintiff") asserts several claims against various Defendants for retaliation after it was revealed that he worked as an informant for law enforcement officials. Relevant to this motion, he brings claims against Plymouth County Sheriff Joseph McDonald ("Defendant McDonald") in his official and individual capacities for violation of his Eighth Amendment and Fourteenth Amendment rights by failing to provide for Plaintiff's safety (Count VI)[1], negligent hiring, training, and supervision (Counts XIX, XXI), vicarious liability for assault and battery (Count XXV), and intentional and negligent infliction of emotional distress (Count XXXI). Defendant McDonald has moved to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(1)

---

[1] This right is guaranteed to convicted criminals by the Eighth Amendment while a substantively identical right is guaranteed to pretrial detainees by the Due Process Clause of the Fourteenth Amendment. *See Suprenant v. Rivas*, 424 F.3d 5, 18 (1st Cir. 2005). Because the claim against Defendant McDonald is not with respect to his time as a pre-trial detainee, however, the Court will only assess Claim VI pursuant to the Eighth Amendment.

and 12(b)(6). (Docket No. 24).  For the reasons stated below, Defendant's motion is **_granted_** in part and **_denied_** in part.

## Background

The factual background is taken from Plaintiff's Complaint (Docket No. 1) and assumed to be true at this stage of the litigation.

Prior to 2015, Plaintiff worked as an informant for the Plymouth County District Attorney's Office ("PCDAO"), the Massachusetts State Police, and the Brockton Police.  On July 5, 2015, Defendants Bradley and Cruz revealed to the Boston Globe Plaintiff's identity as an informant and his activities as such.

When the Boston Globe article was published, Plaintiff was a pretrial detainee at the Essex County Correctional Facility ("ECCF").  After the article was published, other inmates continually harassed Plaintiff, threw urine on him, placed feces in his food, and assaulted him, which resulted in a black eye and abrasions on his face.  Plaintiff was subsequently placed in solitary confinement and, upon rejoining the general population, was again assaulted.

Thereafter, Plaintiff was transferred to the Plymouth County Correction Facility ("PCCF") where he was again attacked by other inmates.  Plaintiff continues to experience blurred vision, difficulties concentrating, migraines, insomnia, and anxiety as a result of the attacks.

Defendant McDonald is the Sheriff of Plymouth County.  Plaintiff alleges that Defendant McDonald failed to protect him from other prisoners while he was in custody at the PCCF.

## Legal Standards

### 1. Rule 12(b)(1)

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of federal subject matter jurisdiction. "The party invoking the jurisdiction of a federal court carries

the burden of proving its existence." *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995). To determine if the burden has been met, a court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." *Fothergill v. United States,* 566 F.3d 248, 251 (1st Cir.2009).

### 2. Rule 12(b)(6)

A defendant may also move to dismiss, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the

other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

Because Plaintiff appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Nevertheless, Plaintiff's pro-se status does not excuse him from complying with procedural and substantive law. *See Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir. 1997).

## **Discussion**

### *1. Official Capacity Claims*

Insofar as Plaintiff's seeks monetary relief for his claims against Defendant McDonald in his official capacity, they must be dismissed. Such official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and is therefore "to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099 (1985) (citations omitted).[2] Accordingly, official capacity suits are subject to the Eleventh Amendment, which bars suits for damages brought by individuals in Federal Court, absent lawful Congressional abrogation or consent of the state. *Seminole Tribe of Fla. V. Fla.*, 517 U.S. 44, 54-71 116 S.Ct. 1114 (1996). Therefore, Defendant McDonald, in his official capacity, is not amenable to suit for damages pursuant to Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65, 109 S.Ct. 2304 (1989) ("[A] state is not a 'person' within the meaning of § 1983."); *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003) ("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity."); *Destek Grp., Inc. v. State of New Hampshire Publ. Utilities Comm'n*, 318

---

[2] "Judges of this Court have previously treated modern Massachusetts Sheriff's Departments as arms of the state entitled to sovereign immunity." *Gallo v. Essex County Sheriff's Dept.*, 2011 WL 1155385, at *3 (D. Mass. Mar. 24, 2011) (collecting cases).

4

F.3d 32, 40 (1st Cir. 2003) ("[N]either a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action.").

## 2. *Individual Capacity Claims*

### a. *Constitutional Claims (Count VI)*

Defendant McDonald argues that he is shielded from liability in an individual capacity by qualified immunity. "Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The First Circuit has adopted a two-part test to assess qualified immunity. A court must consider: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (citation omitted).

The second prong of the test itself has two aspects. "One aspect of the analysis focuses on the clarity of the law at the time of the alleged civil rights violation." *Id.* Thus, in order "[t]o overcome qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987)). The second aspect "focuses more concretely on the facts of the particular case." *Id.* Thus, a court must assess "whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Id.* Importantly, "this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (quotation marks and citation omitted). In short, "the

salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id.*

When assessing qualified immunity at the motion to dismiss stage, this Court is required to "evaluate the sufficiency of the plaintiffs' pleadings. Indeed, because whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded, we must scrutinize the plaintiffs' complaint to determine whether it states a plausible entitlement to relief." *Id.* at 268 (quotation marks and citation omitted). At this stage, however, the Supreme Court has noted that "the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Pearson v. Callahan*, 555 U.S. 223, 238-39, 129 S.Ct. 808 (2009). Thus, the First Circuit has instructed that "where the answer to the first prong of the immunity question may depend on the further development of the facts, it may be wise to avoid the first step." *Maldonado*, 568 F.3d at 270 (citation omitted); *see also Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010) ("It is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity at the summary judgment stage."). Accordingly, I begin with my analysis with the second prong of the qualified immunity standard.

Plaintiff alleges that Defendant McDonald, by failing to provide for Plaintiff's safety, violated his Eighth Amendment rights. "Prison officials have a responsibility not to be deliberately indifferent to the risk to prisoners of violence at the hands of other prisoners." *Burrell v. Hampshire County*, 307 F.3d 1, 7 (1st Cir. 2002) (citation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970 (1994) ("Having incarcerated persons with demonstrated proclivities for antisocial, criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not

free to let the state of nature take its courts." (quotation marks and citation omitted)); *Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 64 (1st Cir. 2002) (noting that prison officials must take "reasonable measures to guarantee inmates' safety from attacks by other inmates").

However, "[n]ot every injury suffered by a prisoner at the hands of another results in constitutional liability on the part of prison officials." *Burrell*, 307 F.3d at 7-8 (citing *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970). Thus, for a failure to protect claim, "the plaintiff must demonstrate he was incarcerated under conditions imposing a substantial risk of serious harm." In addition, "the plaintiff must show that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmates health or safety. That state of mind is more blameworthy than negligence." *Id.* at 8 (citing *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970).

The second requirement itself is composed of two parts. The "deliberate" component requires that "a prison official subjectively 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970). "This standard, requiring an actual, subjective appreciation of risk, has been likened to the standard for determining criminal recklessness." *Giroux v. Somerset County*, 178 F.3d 28, 32 (1st Cir. 1999). Therefore, while "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious[,] . . . a prison official may show that even if the risks were obvious to others, it was not obvious to them." *Burrell*, 307 F.3d at 8 (citation omitted). Moreover, even if an official was aware of the risk, he "cannot be deliberately indifferent if [he] responded reasonably to the risk, even if the harm ultimately was not avoided." *Id.* (citation omitted). Therefore, the inquiry into the reasonableness of the defendant's conduct must "incorporate[] due regard for prison

officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer*, 511 U.S. at 845, 114 S.Ct. 1970 (internal quotations omitted)).

I find that had Defendant McDonald been aware that Plaintiff was outed as an informant and previously assaulted but declined to act to ensure Plaintiff's safety, it would qualify as a violation of Plaintiff's clearly established rights. Consequently, I must assess whether the facts alleged plausibly make out a violation of that right.

In *Perry v. Dickhaut*, this Court granted the defendant summary judgement on a failure to protect claim based on allegations that prison officials placed the plaintiff in a cell with a "known enemy." 125 F. Supp. 3d 285, 295-96. This Court held that summary judgement was proper because there was no evidence "that DOC staff knew or should have known that either Williams or Fanfan were Plaintiff's enemies prior to placing them in the same cell" and that there was no "objective basis for the DOC Defendants to reasonably believe that they were . . . exposing Plaintiff to a legitimate risk of serious harm." *Id.* at 295. *Compare Mallory v. Marshall*, 659 F. Supp. 2d 231, 240-41 (D. Mass. 2009) (granting summary judgement and finding prison officials were not deliberately indifferent where fellow inmate poured hot oil on the plaintiff because "[t]here [was] no evidence of history of tension or altercations between Mallory and Higgins which would have put the Defendants on notice, nor was there any evidence that Higgins had any particular animosity directed towards Mallory that would have necessitated any protective action by prison officials"), *with Serrano v. Lebron Gonzalez*, 909 F.2d 8, 13-14 (1st Cir. 1990) (holding that prison official not entitled to qualified immunity where evidence at trial established that he stood by during a prisoner assault, and did not attempt to intervene or call for help rendering the "failure to act . . . clearly unreasonable").

Here, Plaintiff claims that Defendant McDonald failed to ensure his safety by failing to provide him protective housing upon his transfer to the PCCF despite the obvious risk posed by the Boston Globe article and the previous assaults at the ECCF. Like the defendants in *Perry* and *Mallory*, there is no indication that Defendant McDonald was aware of the article outing Plaintiff as an informant or the subsequent assaults at the ECCF. Those courts, however, ruled on motions for summary judgment. At this stage in the litigation it is appropriate to allow Plaintiff limited discovery in order to determine whether Defendant McDonad was aware of the risks he faced at the PCCF. *See Garcia-Catalan v. United States*, 734 F.3d 100, 104 (1st Cir. 2013) ("[S]ome latitude may be appropriate in applying the plausibility standard in certain types of cases . . . in which a material part of the information needed is likely to be within the defendant's control." (quotation marks and citation omitted)); *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) ("Where modest discovery may provide the missing link, the district court has discretion to allow limited discovery and, if justified, a final amendment of the complaint.").

### b. State Law Tort Claims

Plaintiff asserts various state law tort claims against Defendant McDonald, including common law negligence, intentional infliction of emotional distress, negligence infliction of emotional distress, and vicarious liability for assault and battery. Because Defendant McDonald is a public employee, the Massachusetts Torts Claims Act ("MTCA") provides the exclusive remedy for Plaintiff's tort claims. Mass. Gen. L. c. 258 § 2.

#### i. Negligence Claims (Counts XIX, XXI, & XXXI)

Plaintiff alleges that Defendant McDonald was negligent in hiring, training, and supervising his employees (Counts XIX, XXI) and that he negligently inflicted emotional distress (Count XXXI).

9

The MTCA provides that no "public employee shall be liable for any injury . . . caused by his negligence or wrongful act or omission while acting within the scope of his office or employment." Mass. Gen. L. c. 258 § 2. I find that Defendant McDonald was acting within the scope of his employment with respect to these claims and is consequently shielded from liability under the MTCA.

### ii. Vicarious Liability (Count XXV)

Plaintiff alleges that Defendant McDonald failed to provide for his safety and is therefore vicariously liable for the subsequent assault and battery by fellow inmates (Count XXV). Under Massachusetts law, "the guiding principle used in deciding cases involving an assertion of vicarious liability" is "the right to control the physical conduct of the other." *Hohenleitner v. Quorum Health Resources, Inc.*, 435 Mass. 424, 436, 758 N.E.2d 616 (2001). Here, the doctrine is inapposite as Defendant McDonald had no right to control the physical conduct of Plaintiff's fellow inmates.

### iii. Intentional Infliction of Emotional Distress (Count XXXI)

Under the MTCA, "[i]ndividuals . . . are not shielded from liability in their personal capacities for intentional torts they commit." *T.K. v. Town of Barnstable*, 2018 WL 3748166, at *7 (D. Mass. Aug. 6, 2018); *see also* Mass. Gen. L. c. 258 § 2. Therefore, because Defendant McDonald is not shielded from liability, I must assess whether Plaintiff has plausibly stated a claim.

In order to state a claim for inattentional infliction of emotional distress, a plaintiff must plausibly allege that (1) the defendant "intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the

conduct caused emotional distress; and (4) that the emotional distress was severe." *Polay v. McMahon*, 468 Mass. 379, 385, 10 N.E.3d 1122 (2014).

Plaintiff has failed to plausibly state a claim for intentional infliction of emotional distress. Plaintiff has not alleged any actions taken by Defendant McDonald. Instead, his allegations are that Defendant McDonald failed to provide him with protective housing. Such "'passive conduct' . . . falls short of the high bar set for stating intentional infliction of emotional distress claims in Massachusetts." *T.K.*, 2018 WL 3748166, at *7 (quoting *Morgan v. Town of Lexington*, 138 F. Supp. 3d 82, 94 (D. Mass. 2015)). *Compare Maclellan v. Dahlheimer*, 30 Mass. L. Rptr. 550, 2012 WL 6971005, *3 (Mass. Super. Ct. Dec. 21, 2012) (dismissing claim for intentional infliction of emotional distress premised on school's failure to prevent students from bullying plaintiff), *and Doe v. Bradshaw*, 2013 WL 5236110, at *13 (dismissing claim for intentional infliction of emotional distress based on school's failure to investigate coach's inappropriate sexual conduct with plaintiff), *with Chao v. Ballista*, 806 F. Supp. 2d 358, 380-81 (D. Mass. 2011) (affirming verdict in favor of plaintiff for intentional infliction of emotional distress claim where a prison official "demand[ed] fellatio in twenty-three separate places with an inmate in a correctional institution").

### Request for Leave to Amend

In his Memorandum in Opposition to Defendant's Motion to Dismiss, Plaintiff contends that the Complaint is adequately pled but alternatively requests leave to amend his complaint if the Court is inclined to dismiss. (Docket No. 56, at 12).

Rule 15 instructs Courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, while Rule 15 "reflects a liberal amendment policy . . . the district court enjoys significant latitude in deciding whether to grant leave to amend." *ACA Fin. Guar.*

*Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008) (citation omitted). Thus, the Court may deny leave to amend for a variety of reasons including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962). When deciding whether to grant leave to amend, the court must "examine the totality of the circumstances and . . . exercise its informed discretion in constructing a balance of pertinent considerations." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006).

I find, therefore, leave to amend with respect to Plaintiff's state law claims and constitutional claims against Defendant McDonald in his official capacity would be futile and is consequently denied. I also find, however, that leave to amend may cure the threshold deficiencies in Plaintiff's Complaint for his constitutional claims against Defendant McDonald in his individual capacity and is therefore granted.

## Conclusion

For the reasons stated above, Defendant's motion is ***granted*** in part and ***denied*** in part. Accordingly, Count VI survives this motion.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
